IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

BRADY V. RUELAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KIMBERLY M. BRADY, APPELLEE,

V.

DANIEL M. RUELAS, APPELLANT.

Filed January 2, 2018.    No. A-17-423.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed as modified.

Ryan J. Lewis, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

Peter C. Wegman, of Rembolt Ludtke, L.L.P., for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Daniel M. Ruelas appeals from the Cass County District Court's modification order which denied his request for joint physical custody of the parties' children, modified his parenting time and child support obligation, and ordered him to pay attorney fees. We affirm as modified.

## II. BACKGROUND

Kimberly M. Brady (44 years old) and Daniel (age not apparent from record) have two children, Dillon (born in 1998) and Anthony (born in 2004). The parties were divorced in California in November 2007. Pursuant to the divorce decree, the parties were awarded joint legal custody of the children, and Kimberly was awarded physical custody. Daniel was to have parenting time on alternating weekends from 3 p.m. on Friday to 5 p.m. on Sunday, and midweek parenting time from 3 p.m. to 7 p.m. on Tuesdays and Thursdays; a holiday parenting time schedule was also

- 1 -

established. Daniel was ordered to pay $569 in child support each month. In January 2008, pursuant to a stipulation by the parties, the California court granted Kimberly permission to relocate with the children to Nebraska. At that time, Daniel was awarded parenting time for 6 weeks every summer, 1 week over Christmas vacation, 4 days over Easter vacation, and other times (as arranged by the parties) when he was in Nebraska. The California court's orders were subsequently registered in the district court for Cass County, Nebraska.

On December 8, 2015, Daniel filed an "application to modify" in the district court for Cass County, seeking joint legal and physical custody of the parties' children, and the establishment of child support accordingly. He alleged that since the entry of the California order in January 2008, there had been a material and substantial change in circumstances (specifically that he had moved to Nebraska and changed jobs) justifying a modification of custody, parenting time, and child support.

On January 14, 2016, Kimberly filed an answer denying there had been a material and substantial change in circumstances justifying a modification. She requested an award of attorney fees and costs, and "other and further relief" as determined by the court.

Trial was held on February 2, 2017, and the district court entered its order on April 3. The court found there had been a material change in circumstances warranting a modification of the California orders in that Daniel had relocated to Nebraska near the community where the children lived, and the earnings of the parties had changed substantially. The court found the parties should have joint legal custody of the children, with physical custody to remain with Kimberly; this is the same custodial arrangement the parties had pursuant to the California orders. The court found Kimberly's proposed parenting plan, attached to the order as exhibit A, was in the best interests of the minor children and incorporated the plan into the order. Pursuant to the parenting plan, Daniel is to have regular parenting time every other weekend from Friday at 4 p.m. (or the conclusion of school or school activities, whichever is later) until Sunday at 6 p.m. During the summer break, the parties are to alternate parenting time weekly, with transitions occurring at 5 p.m. on Fridays. Daniel is also to have parenting time for one-half of the children's winter break. A holiday parenting time schedule was also established. Daniel is to be responsible for all transportation at the beginning and conclusion of his parenting time. The court ordered Daniel to pay child support of $887 per month when there are two minor children, and $635 per month when there is only one minor child. Daniel was also ordered to pay $2,200 of Kimberly's attorney's fees. Daniel timely appealed.

## III. ASSIGNMENTS OF ERROR

Daniel assigns, consolidated and restated, that the district court erred in (1) denying his request for joint physical custody and determining his parenting time, (2) its modification of child support, and (3) ordering him to pay attorney fees.

## IV. STANDARD OF REVIEW

An appellate court reviews child custody determinations de novo on the record, but the trial court's decision will normally be upheld absent an abuse of discretion. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015). An abuse of discretion occurs when a trial court bases its

decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Parenting time determinations are also matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016).

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Whether a child support order should be retroactive is also entrusted to the discretion of the trial court, and we will affirm its decision absent an abuse of discretion. *Id.*

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

## V. ANALYSIS

### 1. CUSTODY AND PARENTING TIME

At trial, the parties both agreed that Dillon, who would turn 19 that year, could make his own decisions on when he wanted to spend time with each parent. Accordingly, it was only Anthony's custody and parenting time that was at issue, and we limit our discussion accordingly. Further, neither Daniel nor Kimberly claimed the other was an unfit parent. And both agreed that Anthony was happy, healthy, and well-adjusted.

Anthony, who was going to turn 13 years old 15 days after trial, testified in chambers. Although the attorneys for both parties agreed and asked the Court to "order the attorneys not to disclose what [Anthony] says to [the parties] and order the parents not to inquire of [Anthony] about [his] testimony," and the court verbally ordered the same, there is no written order in our record. Furthermore, the portion of the record containing Anthony's testimony was not sealed. We note Kimberly's brief did provide details from Anthony's in-chambers' testimony. However, being mindful of the agreement made at trial, we do not recount the details of Anthony's testimony in this opinion. Nevertheless, we have reviewed and considered Anthony's testimony, as did the district court.

Daniel testified that after Kimberly and the children moved to Nebraska in 2008, he had parenting time with the children in California twice each year (1 or 2 weeks during Christmas break and 6 weeks in the summer; although the parenting plan included time over the Easter break, the children did not have an Easter break). And Daniel came to Nebraska for a weekend "almost once a year."

Daniel and his wife of three years moved to Nebraska in November 2015, to spend more time with his children. He moved to Waverly, Nebraska, "a couple months" prior to the modification trial. Daniel said his wife and his children have "[a]lways gotten along well" and

"[s]he's been able to take care of them on her own." Daniel had been having parenting time every other weekend from after school on Friday until 9 p.m. on Sunday, and every Wednesday after school until 9 p.m.; he said he had joint custody during the summertime. According to Daniel, Kimberly let him know that Anthony did not complete his homework at Daniel's house on a Wednesday and had stayed up really late. Daniel said he asked Anthony why he had not told him about the homework, and Anthony said he just wanted to spend time with Daniel. Daniel said the issue had been addressed, "So now the very first thing we do before he gets settled in is we take care of homework." Daniel also emails Anthony's teachers. But Daniel has not gone to Anthony's parent/teacher conferences since moving to Nebraska.

Daniel wanted joint physical custody (with equal parenting time) of Anthony, as well as continued joint legal custody, and thought that arrangement would be in Anthony's best interests. Daniel said, "I think [Anthony] needs more structure. He's getting everything he can there and I think it's good for him to understand that his dad is here and he's helping him." (On cross-examination, when asked what "structure" meant, Daniel said, "Adversity." "He needs more than just sitting at home in one house." "I can teach him the mistakes that I've done that he won't do," and "I can teach him . . . what it's like to be a man," "how important family is, all of [sic] family.") Daniel "understand[s] that the kids are going through a lot of things, and they've slowly started gradually accepting what's happening to them, and they're enjoying it a lot more." He has "always been in their lives," and is not "just eight years later showing up saying, I'm your dad, come with me." Daniel said, he has seen a difference from when he first moved here, and, "It was a culture shock for [Anthony] . . . seeing me every day when he only saw me six to eight . . . week[s] -- a year. I'm just asking that I get a little more time so that he can see me more to become who he needs to become." According to Daniel, Anthony has "really accepted" his new house (where he has his own room) and has friends "right down the street."

Daniel's wife testified that although there had been "some strain because of the whole adjustment period," she has a "great relationship" with Anthony and Dillon. She said Daniel has a loving relationship with the boys. Daniel's wife is retired, so if the court were to award Daniel equal parenting time, she would be able to help get Anthony to school on time and help with homework or whatever else he needs.

Kimberly testified she moved with her children from California to Eagle, Nebraska, in 2008. Kimberly and the boys live with her parents in a three-bedroom home, and the boys share a room. She agreed it would be appropriate for the parties to share joint legal custody. However, Kimberly did not believe alternating weekly parenting time during the school year, as requested by Daniel, was in Anthony's best interests because "he already has his routine. He's had that routine for a very long time already. And I think that . . . what he is going through . . . [r]outine is important." Kimberly also stated there had been issues with Anthony not getting his homework done at Daniel's home on Wednesday evenings, resulting in Anthony and Kimberly staying up late those nights to complete the work. Kimberly said Anthony told her he is not comfortable doing his homework at Daniel's house because "he doesn't believe that his father knows what he's talking about." Kimberly said the boys had "structure" at her house via their daily routine, which included eating a sit-down meal together every evening.

Kimberly believed the parties' current parenting time schedule was "fair." Her proposed parenting plan (exhibit 15) was for Daniel to have parenting time every other weekend from Friday

at 4 p.m. (or the conclusion school or school activities, whichever is later) until Sunday at 6 p.m.; alternating weekly parenting time during the school summer break; and one-half of the "Winter Break." She also proposed a holiday parenting time schedule. During her testimony, Kimberly said she would like Daniel's current Wednesday parenting time to end at 8 p.m. (instead of 9 p.m.), so that she and Anthony could "have a little bit more time for homework."

In its order, the district court found there had been a material change in circumstances warranting a modification of the California orders in that Daniel had relocated to Nebraska near the community where the children lived, and the earnings of the parties had changed substantially. However, the court found it was in Anthony's best interests for the parties to have joint legal custody, with physical custody to remain with Kimberly. The district court recognized Daniel "has taken sizable and admirable steps to increase his involvement in the lives of his children," and Anthony "prizes his time with both parents" and is "thriving in the present arrangement." But the court concluded Kimberly "has been the primary caregiver for Anthony" and the court was "reluctant to interfere at this time."

The court further found that Kimberly's parenting plan, attached to and incorporated in the order as "Exhibit A," was in Anthony's best interests. Exhibit A was identical to exhibit 15 received into evidence at trial. Accordingly, Daniel is to have parenting time every other weekend from Friday at 4 p.m. (or the conclusion school or school activities, whichever is later) until Sunday at 6 p.m.; alternating weekly parenting time during the school summer break; and one-half of the "Winter Break." Neither Exhibit A nor exhibit 15 included Wednesday evening parenting time for Daniel, which had been the parties' arrangement before trial.

Daniel argues the district court erred when it failed to award joint physical custody of Anthony to both parties. He claims that "[a]bsent a logistical issue or a 'fitness' issue, parents should be awarded joint physical custody." Brief for appellant at 11. However he cites us to no authority supporting his position. Kimberly argues the district court did not abuse its discretion given that Anthony was flourishing in the present and long-standing custody arrangement.

Daniel also argues the district court erred in not granting his request for equal parenting time. Additionally, Daniel claims the district court abused its discretion in ordering his parenting time "actually be cut back to just every other weekend during the school year." Brief for appellant at 12. Kimberly argues the district court did not abuse its discretion regarding Daniel's school year parenting time because the record showed that she is "relatively more able than Daniel to satisfy Anthony's educational needs during the school week." Brief for appellee at 17. There was testimony that Anthony would not complete his homework at Daniel's home during the Wednesday evening parenting time, resulting in Anthony and Kimberly staying up late to complete the work.

Keeping the evidence and the court's findings in mind, we now consider the legal principles governing custody and parenting time matters. When deciding custody issues, the court's paramount concern is the child's best interests. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). The best interests inquiry has its foundation in both statutory and case law.

Neb. Rev. Stat. 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

> [T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member . . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse. . . .

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

Based on the evidence described above, including Anthony's testimony, we cannot say the district court abused its discretion by continuing Anthony's physical custody with Kimberly or by adopting Kimberly's proposed parenting time schedule. Although the Wednesday night parenting time appeared to be agreeable between the parties, we cannot say the court abused its discretion by not ordering it in light of the evidence presented. That is not to say, of course, that the parties could not continue that practice by agreement on those Wednesday evenings when Anthony's homework may require less time than usual. Daniel further argues the court erred in ordering him to be responsible for all parenting time transportation, but we find no abuse of discretion in that regard.

## 2. CHILD SUPPORT

### (a) Modification

In her brief, Kimberly states the district court "adopted" her child support calculation. While the amount of child support in Kimberly's proposed basic income and support calculation, Worksheet 1 (exhibit 13, page 1) is the same amount of support ordered by the district court, nowhere in the court's order does it say it is "adopting" her proposed calculation, and the district court did not attach a child support worksheet to its order. The district court's failure to attach a child support worksheet to its order would normally result in a summary remand. See *Rutherford v. Rutherford*, 277 Neb. 301, 308, 761 N.W.2d 922, 927 (2009) ("[T]he record on appeal from an order imposing or modifying child support shall include any applicable worksheets with the trial court's order. Failure to include such worksheets in the record will result in summary remand of the trial court's order."). While *Rutherford* summarily remanded the trial court's order for failure to include applicable worksheets, the child support amount was the only issue in that case. In the instant case, Daniel does not challenge the amount of child support ordered, only that a joint custody calculation should have been used, and that Kimberly failed to properly plead for a modification or prove a material change in circumstances warranting a modification. Those issues can be addressed without a remand.

Daniel claims the district court abused its discretion in denying his request to modify child support using a joint custody calculation. However, his argument was based on an award of joint physical custody, which was not granted. Accordingly, there was no such abuse of discretion.

He also claims the district court abused its discretion by "unilaterly [sic] modifying child support when [Kimberly] did not file a counterclaim or otherwise plead for a modification to increase child support." Brief for appellant at 12. However, in his own application to modify, Daniel pled there had been a material change in circumstances warranting a modification of child support, in that he had changed jobs since child support was originally ordered. See *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016) (Generally, a party cannot complain of error which the party has invited the court to commit.) Further, in her answer, Kimberly prayed for "other and further relief" as determined by the Court. And the issue of child support was litigated at trial. During direct examination, Kimberly asked the court to change child support and make the change retroactive to January 1, 2016, the first day of the month after Daniel filed his complaint to modify. Additionally, both Daniel and Kimberly presented proposed child support calculations. See *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005) (wife's paternity petition which prayed for "such other relief as may be allowed by law or equity" was sufficient for trial court to award child support and retroactive support; both issues had been tried and evidence submitted). Accordingly, the child support issue was properly before the district court.

Additionally, Daniel claims "Kimberly also failed to show a material change in circumstances in the financial position of Daniel." Brief for appellant at 13. As stated above, Daniel himself pled that there had been a material change in circumstances warranting a modification of child support, in that he had changed jobs since child support was originally ordered. See *Burcham v. Burcham, supra*.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). And Neb. Ct. R. § 4-217 (rev. 2008) states:

> Application of the child support guidelines which would result in a *variation by 10 percent or more*, but not less than $25, upward or downward, *of the current child support obligation*, child care obligation, or health care obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, *establishes a rebuttable presumption of a material change of circumstances*.

(Emphasis supplied.) Pursuant to the November 2007 California divorce decree, Daniel was ordered to pay $569 per month in child support; that amount remained unchanged at the time of the February 2017 modification trial. After the February trial, the district court increased Daniel's child support obligation to $887 per month when there are two minor children, and $635 per month when there is only one minor child. This is "a variation by 10 percent or more, but not less than $25, upward." There is evidence in the record that Daniel moved to Nebraska in November 2015, and had worked for his current employer since late June 2016; there was no indication he intended to seek different employment. Accordingly, the increase in the child support obligation was "due to financial circumstances which [had] lasted 3 months and [could] reasonably be expected to last an additional 6 months." As such, there was a rebuttable presumption that there had been a material change in circumstances warranting modification. Daniel did not rebut that presumption. Under

- 7 -

these circumstances, we conclude that a material change in circumstances had occurred and that the court did not err in modifying Daniel's child support obligation.

(b) Abatement During Summer

Daniel argues the district court abused its discretion when it did not give him an abatement in child support during the summer months when he has equal parenting time. Although the parenting plan incorporated into the court's order did not specify the dates of the "school summer break," during which Daniel is to have alternating weekly parenting time, Daniel's brief suggests the abatement be for the months of June, July, and August; and in her brief, Kimberly states she does not oppose Daniel's request. Kimberly "contends that this Court should grant the abatement reflected in [her] joint physical custody-child support calculation, seeing as the District Court otherwise relied on [her] child support calculation in determining child support." Brief for appellee at 21. However, as noted previously in this opinion, while the amount of child support in Kimberly's proposed basic income and support calculation, Worksheet 1 (exhibit 13, page 1), is the same amount of support ordered by the district court, nowhere in the court's order does it say it "adopted" Kimberly's proposed calculation, and the district court did not attach a child support worksheet to its order.

Neb. Ct. R. § 4-210 (rev. 2008) states:

Visitation or parenting time adjustments or direct cost sharing should be specified in the support order. If child support is not calculated under § 4-212 [joint physical custody], *an adjustment in child support may be made at the discretion of the court* when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. During visitation or parenting time periods of 28 days or more in any 90-day period, *support payments may be reduced by up to 80 percent*. The amount of any reduction for extended parenting time shall be specified in the court's order and shall be presumed to apply to the months designated in the order. . . .

(Emphasis supplied.) We cannot say the district court abused its discretion in failing to award an abatement.

However, because Kimberly "does not oppose [Daniel's] request for an abatement in child support during the summer months," brief for appellee at 21, we will modify the district court's order to include an abatement. And as stated previously, the parties agree that the summer abatement will occur in June, July, and August. Kimberly "contends that this Court should grant the abatement in [her] joint physical custody-child support calculation," brief for appellee at 21. Her proposed joint custody-child support calculation, Worksheet 3 (exhibit 13, pages 2 and 3), shows Daniel's child support obligation to be $409 per month for two children, and $310 per month for one child; this is a reduction of approximately 46- to 49-percent from the regular support payments which is in compliance with § 4-210. Accordingly, we modify the district court's order so that for the summer months of June, July, and August, Daniel's child support obligation will be $409 per month for two children, and $310 per month for one child.

(c) Retroactivity

Daniel argues the district court abused its discretion in ordering child support be retroactive to January 2016, because there was no evidence or testimony as to what either of the parties' income was dating back to that date. Although the district court did not attach the child support worksheet to its order, as we noted previously, the amount of child support in Kimberly's proposed basic income and support calculation, Worksheet 1 (exhibit 13, page 1), is the same amount of support ordered by the district court. Kimberly's exhibit attributed a total monthly income of $3,336.67 to Daniel. That monthly income equates to $19.25 per hour, which is the amount Daniel testified he was earning at the time of trial in February 2017, and the amount reflected in a January paystub (exhibit 3); July 2016 paystubs (exhibit 9) show that Daniel was previously earning $18.50 per hour at that same employer. Daniel testified he previously worked for a different company (from the time he moved to Nebraska until sometime in May or June 2016), earning more money; a May paystub (exhibit 10) shows a rate of $25 per hour. Daniel testified he did not have a "set pay scale" at that previous employer, but did say he took a pay cut when he left that job (he left that job to avoid out-of-town travel). Kimberly testified she had worked for her same employer for 8 years, and earned $16.70 per hour at the time of trial; that hourly rate can also be deduced from her paystubs (exhibit 17). Thus, contrary to Daniel's claim, there was some indication as to the parties' income in January 2016--that it was equal to or more than it was at the time of trial in February 2017.

The Nebraska Supreme Court has stated that "absent equities to the contrary, child support modifications should generally apply retroactively to the first day of the month following the complaint's filing." *Freeman v. Groskopf*, 286 Neb. at 721-22, 838 N.W.2d at 308. Kimberly argues that Daniel did not argue an exception to the general rule regarding retroactivity, or that he was unable to pay the retroactive support. She claims that Daniel, "being fully apprised of the possibility that retroactive child support could be awarded," made no argument regarding retroactive child support to the district court and thus cannot challenge such on appeal. Brief for appellee at 22.

Kimberly raised the retroactivity issue at trial, and thus a challenge to an award of retroactive support is proper for appellate review. However, we agree that Daniel did not argue an exception to the general rule or that he was unable to pay retroactive support. During her testimony, Kimberly made clear that she was seeking a modification of child support, and that she wanted the modification to be retroactive to January 1, 2016, which was the first day of the month after Daniel filed his complaint to modify. After Kimberly's testimony, Daniel took the stand as a rebuttal witness but did not address the retroactivity issue at all. Accordingly, the district court did not abuse its discretion in ordering the child support modification retroactive to January 1, 2016, which was the first day of the month following Daniel's filing.

Daniel also argues the district court abused its discretion in "not ruling that all retroactive child support shall be deemed a non-interest bearing judgment against [him] with a reasonable monthly payment and not an arrearage." Brief for appellant at 15. In her brief, Kimberly states she "does not oppose [Daniel's] request for a non-interest bearing judgment rather than an arrearage[.]" Brief for appellee at 24. However, she and Daniel suggest different payment plans on that judgment; he suggests a payment of $25 per month, while she suggests $250 per month.

The district court's order does not state whether the retroactive child support is to be a non-interest bearing judgment or an arrearage, nor does it state how that retroactive support is to be paid (e.g., a one-time payment or a payment plan). To the extent the parties wanted a specific disposition with respect to how the retroactive award is to be paid, they should have presented the issue to the district court. *Brown v. Jacobsen Land & Cattle Co.*, 297 Neb. 541, 900 N.W.2d 765 (2017) (appellate court will not consider issue on appeal that was not presented to or passed upon by trial court, because trial court cannot commit error in resolving issue never presented and submitted to it for disposition). Accordingly, we do not address the issue of how the retroactive award is to be paid.

### 3. ATTORNEY FEES

Daniel argues the district court abused its discretion when it ordered him to pay $2,200 of Kimberly's attorney's fees because a modification action was justified, he did not cause undue delays or hearings, and the parties' earning capacities were similar. Kimberly argues Daniel was only ordered to pay approximately 25-percent of her attorney's fees and that "such a limited award" was not an abuse of discretion. Brief for appellee at 25.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id*. A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id*. Thus, there was authority, in this modification of a dissolution decree case, for the awarding of attorney fees. *Id*.

In awarding attorney fees, a court should consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id*.

Kimberly's attorney's affidavit in support of fees was admitted into evidence. The affidavit shows that as of January 21, 2017, Kimberly had incurred $6,649 in attorney's fees (44.2 hours of attorney and paralegal time) and $321.35 in expenses. Her attorney stated his normal hourly rate was $300 per hour, but he charged $195 per hour on this case, "as that was the rate of one of our former associate attorneys" who initially represented Kimberly in this case. An additional $1,860 in fees was anticipated for trial preparation and trial (8 hours of attorney time and 2 hours of paralegal time). Accordingly, Kimberly's total attorney fees and expenses were estimated to be $8,830.35.

Daniel's attorney's affidavit for attorney fees was admitted into evidence. The affidavit shows that as of September 6, 2016, Daniel had incurred a total of $4,110.72 in attorney's fees and costs (18.1 hours of attorney time at $185 per hour; 3.3 hours of paralegal time at $95 per hour; $448.72 in costs) and $321.35 in expenses. An additional 8.5 hours of time was anticipated for trial preparation and trial. We note the parties apparently attempted mediation after September 6 (the date of the attorney's affidavit), but the affidavit does not include charges after August 12.

Having reviewed the record in this case, we find no abuse of discretion in the district court's decision to award $2,200 in attorney fees to Kimberly.

## VI. CONCLUSION

For the reasons stated above, we modify the district court's order to include an abatement in Daniel's child support obligation for the summer months of June, July, and August, when he has alternating weekly parenting time. During those 3 months only, his child support obligation will be $409 per month for two children, and $310 per month for one child. The remainder of the district court's order regarding custody, parenting time, transportation, regular child support, retroactive child support, and attorney fees is affirmed.

AFFIRMED AS MODIFIED.